**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **BRUCE LERNER,**<br>**Plaintiff,**<br>**vs.**<br>**TD AMERITRADE, INC.,**<br>**Defendant.** | **8:14CV325**<br><br>**FINDINGS AND RECOMMENDATION** |

This matter is before the court on the defendant's Motion to Dismiss the Putative Class Action Complaint and Request to Take Judicial Notice (Filing No. 47). The defendant filed a brief (Filing No. 48) and an index of evidence (Filing No. 49) supporting the motion. The plaintiff filed a brief (Filing No. 50) opposing the motion. The defendant filed a brief (Filing No. 53) in reply. The plaintiff's request for oral argument is denied as unnecessary and for failure to comply with NECivR 7.1(d) by including the request in a footnote rather than by filing a timely motion. **See** Filing No. 50 - Response p. 8 n.1.[1]

## BACKGROUND

The plaintiff challenges the defendant's practice of routing customers' non-directed, standing limit orders to trading venues that pay the largest kickbacks rather than those who will fulfill its duty of best execution. **See** Filing No. 1 - Complaint p. 2. The plaintiff alleges the defendant's routing practice constitutes a breach of fiduciary duty. ***Id.*** The plaintiff states, "[t]his action seeks to end this practice by foreclosing TD Ameritrade's consideration of kickbacks in deciding where to send trades and to disgorge the money TD Ameritrade wrongfully obtained as a result of its breach." ***Id.*** The defendant is an introducing securities broker-dealer and a registered investment advisor. ***Id.*** ¶ 6. The plaintiff, who has been the defendant's client since before 2006, placed non-directed, standing limit orders with the defendant subject to the alleged improper practices. ***Id.*** ¶ 5. This plaintiff purports to represent all persons who placed a

[1] All page number references correspond to the numbers assigned when filed in the CM/ECF system.

non-directed, standing limit order with the defendant that was executed until the date notice is disseminated to the class. ***Id.*** ¶ 38.

The plaintiff alleges four separate claims for relief: breach of fiduciary duty, violations of Nebraska's Consumer Protection Act (NCPA) Neb. Rev. St. §§ 59-1601 to 59-1623, unjust enrichment, and declaratory relief. **See** Filing No. 1 - Complaint p. 14-18. The plaintiff alleges the "material and opportunistic breaches" caused his orders "to be executed in a manner that did not fulfill best execution" and he has "been damaged thereby, in an amount to be determined at trial." ***Id.*** ¶ 49. The plaintiff describes the routing practice damage as a "detriment" to the clients by "compromising efficiency and liquidity," resulting in routing "to venues where the orders were up to 25% less likely to be executed." ***Id.*** at 4, 11. The plaintiff alleges the defendant's "material and opportunistic" breaches entitle him to "an accounting and injunctive relief prohibiting [the defendant] from factoring kickbacks when performing best execution for non-directed, standing limit orders." ***Id.*** ¶¶ 49-50. The plaintiff also alleges he is entitled to "actual damages" and for the defendant to "be required to pass-on the rebate payments it receives to its customers as a result of routing their non-directed, standing limit orders." ***Id.*** ¶ 57. Finally, the plaintiff contends the defendant's "conscious wrongdoing" resulted in unjust enrichment in the amount of the "monies wrongfully obtained," which should be subject to a constructive trust for the benefit of the class. ***Id.*** ¶¶ 59-62.

The defendant filed a motion to dismiss the plaintiff's Complaint on three grounds. **See** Filing No. 47. Initially, the defendant asserts the plaintiff's claims are preempted by the Securities Litigation Uniform Standards Act of 1998 (SLUSA), 15 U.S.C. §§ 77p, 78bb(f). ***Id.*** Alternatively, the defendant argues the plaintiff's claims are preempted by federal regulation. ***Id.*** Finally, the defendant contends the plaintiff's Complaint fails to state a claim for relief on the merits. ***Id.***

For consideration of the motion, the defendant seeks judicial notice of certain sections of the Federal Register and Code of Federal Regulations. **See** Filing No. 47 - Motion p. 2. Additionally, the defendant seeks judicial notice of excerpts from a June 17, 2014, transcript for a hearing before a U.S. Senate subcommittee. ***Id.*** The plaintiff does not object to taking judicial notice of these documents, which are embraced by the Complaint. In any event, as part of the court's review of the defendant's motion, the

court may consider exhibits annexed to the Complaint or incorporated by reference. **See** Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); ***Zayed v. Associated Bank, N.A.***, 779 F.3d 727, 732 (8th Cir. 2015); **see** ***SEC v. Siebel Sys., Inc.***, 384 F. Supp. 2d 694, 699 n.6 (S.D.N.Y. 2005) (taking judicial notice of transcripts relied upon by complaint). The court takes judicial notice of the exhibits identified not for the truth of the facts asserted therein, but solely to determine the content of the testimony and regulations.

The plaintiff's Complaint relies on sources other than the plaintiff's personal knowledge for many of the allegations. The Complaint references testimony given by Steven Quirk (Quirk), a senior executive for the defendant, and others before the U.S. Senate's Permanent Subcommittee on Homeland Security and Governmental Affairs, on June 17, 2014. **See** Filing No. 1 - Complaint p. 7-8; **see** also Filing No. 49-2 Ex. 1(A). The Complaint also relies upon academic research regarding order routing practices of various brokers. **See** Filing No. 1 - Complaint p. 9-12. The defendant opposes reliance on the academic research referenced by the plaintiff, arguing the research is generic and irrelevant to the plaintiff's claims. **See** Filing No. 48 - Brief p. 50-51.

## ANALYSIS

### A. SLUSA Preemption

The court reviews dismissal of a state law claim based on SLUSA preemption as a dismissal for failure to state a claim. ***Kutten v. Bank of Am., N.A.***, 530 F.3d 669, 670 (8th Cir. 2008); **see** ***In re Kingate Mgmt. Ltd. Litig.***, 784 F.3d 128, 135 n.11 (2d Cir. 2015) (noting SLUSA preclusion reviewed under Rule 12(b)(6)). Congress intended SLUSA, an amendment to the Securities Act of 1933 and the Securities Exchange Act of 1934, to preempt claims by plaintiffs eluding Federal law requirements and protections by filing specified types of actions in State court. ***Sofonia v. Principal Life Ins. Co.***, 465 F.3d 873, 876 (8th Cir. 2006) (**citing** H.R. Rep. No. 105-803 (Oct. 9, 1998) (Conf. Rep.)). Specifically, Congress sought to curb perceived abuses of class action cases involving securities and enforce heightened pleading requirements. ***Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit***, 547 U.S. 71, 81-82 (2006).

Accordingly, SLUSA allows removal and "expressly preempts all state law class actions based upon alleged untrue statements or omissions of a material fact, or use of a manipulative or deceptive device or contrivance, in connection with the purchase or sale of a covered security." ***Dudek v. Prudential Sec., Inc.***, 295 F.3d 875, 879 (8th Cir. 2002); **see** 15 U.S.C. §§ 77p(b)-(c), 78bb(f)(1)-(2). The plaintiff concedes he disputes only two elements: whether the action alleges the defendant (i) misrepresented or omitted a material fact or (ii) used or employed a manipulative or deceptive device or contrivance and whether the defendant's conduct was in connection with the purchase or sale of a covered security. **See** Filing No. 50 - Response p. 15.

The plaintiff contends his claims are consumer protection claims and he does not allege fraudulent misrepresentation or omission, but to the extent the Complaint contains such allegations they are, at best, merely extraneous details. ***Id.*** at 8, 15-16. In opposition, the defendant argues, although the plaintiff denies he alleges misrepresentations or omissions, the breach of fiduciary duty claim involves misrepresentations or omissions, in substance. **See** Filing No. 48 - Brief p. 31-35. Specifically, the defendant contends the plaintiff's allegations surround misrepresentations about the factors the defendant would consider when routing orders and manipulative and deceptive trading practices. ***Id.*** at 31-32. The Complaint notes the defendant made statements on its website telling clients the best execution obligation focused on the factors most important to the clients, including execution price and speed, however the plaintiff alleges the defendant put its own interests ahead of clients by maintaining a practice of steering trades to venues paying the largest kickback, rather than best execute the trade. **See** Filing No. 1 - Complaint p. 5-7. The defendant also relies on the plaintiff's use of terms indicating the defendant engaged in "conscious wrongdoing" in pursuit of "the largest kickbacks" when it devised an "automated, non-discretionary routing policy and practice" to "pre-determined trading venues" which routing likely resulted in "inferior execution relative to other trading venues." **See** Filing No. 48 - Brief p. 31-34 (**quoting** Filing No. 1 - Complaint ¶¶ 1, 21-22, 60); Filing No. 53 - Reply p. 3-4. Additionally, the plaintiff alleges the defendant has been using the automated system for "more than ten years" . . . "to direct standing limit

order flow to pre-determined trading venues" to "maximize kickback revenue," "regardless of best execution principles." **See** Filing No. 1 - Complaint p. 6.

The court evaluates SLUSA applicability by employing a fair reading of the substance of the plaintiff's allegations, rather than merely the name of the cause of action. ***Kutten***, 530 F.3d at 670; ***Dudek***, 295 F.3d at 879 (upholding preemption dismissal when, although fraud allegations deleted, the "essence" and "substance" of the plaintiffs' fairly read complaint alleged misstatements and omissions). Further, the court must focus on material facts, those which are factual predicates of the claim. ***LaSala v. Bordier et Cie***, 519 F.3d 121, 141 (3d Cir. 2008). "To be a factual predicate, the fact of a misrepresentation must be one that gives rise to liability, not merely an extraneous detail." ***Id.*** (noting allegation of misrepresentation may be implicit or explicit). "[W]hen one of a plaintiff's necessary facts is a misrepresentation, the plaintiff cannot avoid SLUSA by merely altering the legal theory that makes that misrepresentation actionable." ***Id.*** (noting SLUSA preemption may apply "even if misrepresentation is not a legal element of the claim"); **see *In re Kingate***, 784 F.3d at 140 (stating "plaintiffs should not be permitted to escape SLUSA by artfully characterizing a claim as dependent on a theory other than falsity when falsity nonetheless is essential to the claim, such as by characterizing a claim of falsity as a breach of the contractual duty of fair dealing").

The plaintiff fails to cite a single case holding a breach of fiduciary duty claim may survive SLUSA preemption.[2] In contrast, SLUSA requires dismissal of cases alleging a breach of fiduciary duty for "conflict of interest transactions" where the defendant failed to disclose relevant information. ***Kutten***, 530 F.3d at 671 (noting for breach of fiduciary duty claim no appreciable "distinction between 'deceiving' and 'failing to be honest,' or between "omitting a material fact' and 'failure to disclose'"); **see also *In re Herald***, 730 F.3d 112, 119 n.7 (2d Cir. 2013) (noting "the fact that plaintiffs allege claims sounding in negligence, breach of fiduciary duty, and the like does not preclude preclusion under SLUSA where, as here, it is obvious that the banks' liability, under any claim, is premised on their participation in, knowledge of, or, at a minimum, cognizable disregard of Madoff Securities' securities fraud"); ***Atkinson v. Morgan Asset Mgmt,***

[2] The holdings in both cases cited by the plaintiff (Filing No. 50 - Brief p. 17-18) are irrelevant to the preemption determination.

***Inc.***, 658 F.3d 549 (6th Cir. 2011) (noting "fraud-based concepts invade" the plaintiffs' claims including breach of fiduciary duty). Additionally, "if the success of a claim depends on conduct specified in SLUSA, and the defendant was complicit in that conduct, the claim is covered by SLUSA even though plaintiffs have artfully avoided using SLUSA's terms." ***In re Kingate***, 784 F.3d at 149 (remanding claims, including for fiduciary duty, for determination of the defendant's conduct in relation to the alleged falsity); **see *Segal v. Fifth Third Bank, N.A.***, 581 F.3d 305 (6th Cir. 2009) (SLUSA barred state-law securities-related class action claims alleging the defendant carried out a "planned corporate scheme" that was "intended to (and did) lure grantors, testators, and others to [benefit defendant]" and the defendant "did not deal honestly, ethically, fairly, and/or in good faith" with the putative class members.).

"In ***Dabit***, the Supreme Court instructed that SLUSA should be read with the 'presumption that Congress envisioned a broad construction,' so that the most troublesome class actions would be subject to the PSLRA's procedural reforms." ***Siepel v. Bank of Am., N.A.***, 526 F.3d 1122, 1127 (8th Cir. 2008) (**quoting *Dabit***, 547 U.S. at 86). Despite the plaintiff's attempt to deny he asserts allegations of fraudulent misrepresentation or omission (Filing No. 48 - Response p. 8-9), the court may find the plaintiff implicitly alleges the defendant engaged in misrepresentations in connection with the breach of fiduciary duty. Clear indicators of SLUSA preemption would be the use of "descriptive buzz words like 'disclosed,' 'undisclosed,' or 'secret'" in the other allegations. **See *Gwin v. Nationwide Life Ins. Co.***, No. 2:08CV59, 2008 WL 8945610, at *3 (N.D. Ala. Apr. 15, 2008).

Here, the plaintiff alleges claims for relief based on breach of fiduciary duty and violation of the NCPA, as well as derivative claims for unjust enrichment and declaratory judgment. **See** Filing No. 1 - Complaint. Nevertheless the twenty page Complaint cites academic research and references information the defendant would have had "for more than ten years" confirming the negative relationship between take fees (and by extension the corresponding payment for order flow kickbacks) and limit order execution quality, yet consciously disregarded in derogation of its duties. **See *id.*** at 10-12, 18. The plaintiff alleges the defendant intentionally used an "automated, non-discretionary routing policy and practice" over time to send non-directed, standing limit orders to "pre-

determined trading venues" "in derogation of its duties" and "regardless of best execution principles" seeking only to "maximize kickback revenue" at the expense of its clients. **See** Filing No. 1 - Complaint ¶¶ 1, 21-22, 59-61. The plaintiff alleges the defendant's "conscious wrongdoing" in pursuit of "the largest kickbacks" uses "unfair methods of competition and unfair acts or practices," . . . "is substantially injurious to consumers, offends public policy and practice, violates established concepts of duty and fairness, and is immoral, unethical, oppressive, and unscrupulous." ***Id.*** ¶¶ 1, 56, 60. The plaintiff suggests the defendant's alleged improper conduct impacts the public's interest in "maintaining transparency." ***Id.*** ¶ 55. Importantly, the plaintiff alleges the defendant has been using the improper routing practices for more than ten years in derogation of its duties of best execution knowingly seeking kickbacks rather than a trading venue to best execute the trades. ***Id.*** ¶¶ 21-23. Finally, the plaintiff seeks disgorgement of profits, not based on actual economic injury, but based on the defendant's conscious wrongdoing. ***Id.*** ¶¶ 1, 60, and B. For these reasons the court finds a fair reading of the substance of the plaintiff's allegations show more than merely extraneous detail suggesting alleged misrepresentations and omissions, but factual predicates giving rise to liability for both the claim for breach and, independently, for damages.

The plaintiff also challenges whether the defendant's alleged breach of a fiduciary duty was in connection with the purchase or sale of a covered security. **See** Filing No. 50 - Response p. 18-23. The plaintiff alleges the defendant's alleged conduct was not material to his decision to place an order because it was after he placed his stock order that the defendant breached the fiduciary duty of best execution with such order. ***Id.*** at 19. The Complaint alleges the "lawsuit seeks redress for TD Ameritrade's breach of its duty of 'best execution' when routing a specific type of investment trade for execution on behalf of its customers, known as a 'non-directed, standing limit order.'" **See** Filing No. 1 - Complaint ¶ 1. The Complaint further describes a limit order as "an order to buy or sell stock at a specified price (the 'limit') or better." ***Id.*** n.1. The plaintiff describes the defendant as "a brokerage firm that executes orders for stock and other investment trades on behalf of its clients." ***Id.*** ¶ 1. The claims are based on the defendant providing "trade execution services . . . to trading venues that effectuate the

purchase or sale of the equity" using the alleged improper order "routing policy" comparing market centers and executing securities transactions based on the amount of kickback the defendant received for each order. ***Id.***

"Under ***Dabit***, however, 'it is enough that the fraud alleged "coincide" with a securities transaction—whether by the plaintiff or by someone else.'" ***Siepel***, 526 F.3d at 1127 (**quoting** ***Dabit***, 547 U.S. at 85) (concluding that SLUSA prohibits "state-law claims that a trustee breached its fiduciary duty by failing to disclose conflicts of interest in its selection of nationally-traded investment securities"). The plaintiff contends a more narrow interpretation is required by ***Chadbourne & Parke LLP v. Troice***, 134 S. Ct. 1058 (2014). **See** Filing No. 50 - Response p. 18-19. In ***Troice***, the Court held, "[a] fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a 'covered security.'" ***Troice***, 134 S. Ct. at 1066 (noting the Court "do[es] not here modify ***Dabit***").

The plaintiff contends his decision to place the order did not rely on the conduct, which took place after he placed the order. The plaintiff's allegations are based on the premise the decision to place the order may not have been materially affected by the defendant's later conduct, but clearly allege the plaintiff's order's attractiveness and execution efficiency was materially affected by the defendant's placement of the order with a pre-determined venue based solely on payment for order flow. **See** Filing No. 1 - Complaint p. 7-12. In any event, the plaintiff also alleges the defendant's conduct was based on an undisclosed policy and practice, in conflict with the defendant's website statements, pre-dating the orders whereby they were automatically sent to the particular market center providing the highest rebate. ***Id.*** In essence, the plaintiff relied on the defendant's alleged misstatements and omissions of information about the scheme to place the order. Accordingly, in this case, as in ***Segal***, the "allegations do not merely 'coincide' with securities transactions; they depend on them." ***Segal***, 581 F.3d at 310; **see** ***Romano v. Kazacos***, 609 F.3d 512, 522 (2d Cir. 2010) (defining "coincide" as broad in scope to include the plaintiff's claims that "necessarily allege," "necessarily involve," or "rest on" the purchase or sale of securities). The plaintiff's allegations of misrepresentation and omission concern the best execution of the trades by routing the

non-directed, standing limit orders based on payment for order flow. Thus the misrepresentations or omissions coincide with the purchase or sale of covered securities. As all four elements have been met, the plaintiff's claims are preempted by SLUSA and should be dismissed.

**B. Federal Regulation Preemption**

The defendant argues resolution of the plaintiff's claims necessarily extends beyond the duties imposed by law to invade the federal regulatory framework governing order flow payments and order execution. **See** Filing No. 48 - Brief p. 37-47. The plaintiff denies the claims are preempted because no conflict exists between the federal regulations and the claims. **See** Filing No. 50 - Response p. 23 (arguing claims are based on "a common law duty that has been repeated in federal securities regulations"). Although the plaintiff does not dispute order flow payments are permissible, he contends the defendant allowed the amount of the payments to override all other factors when making order routing decisions, thereby breaching the fiduciary duty of best execution. ***Id.*** at 23, 27-29. In reply, the defendant contends the plaintiff attempts to add a motive-based standard and expand the fiduciary duty beyond the current federal regulation best execution requirements, creating a conflict between federal and state law. **See** Filing No. 53 - Reply p. 26-27.

"Ordinary preemption is a federal defense that exists where a federal law has superseded a state law claim. Express preemption occurs where a federal law explicitly prohibits or displaces state regulation in a given field." ***Johnson v. MFA Petroleum Co.***, 701 F.3d 243, 248 (8th Cir. 2012) (internal citation omitted). "Preemption may also be applied in situations where a state [law] directly conflicts with federal law, or in limited circumstances where 'a federal law completely occupies the field of regulation so that by implication there is no room for state regulation and the coexistence of federal and state regulation is not possible.'" ***Id.*** (**citing** ***Florida Lime & Avocado Growers, Inc. v. Paul***, 373 U.S. 132, 142-43 (1963) and **quoting** ***Mo. Bd. of Exam'rs for Hearing Instrument Specialists v. Hearing Help Express, Inc.***, 447 F.3d 1033, 1035 (8th Cir. 2006)); **see** ***Guice v. Charles Schwab & Co.***, 674 N.E.2d 282, 285 (N.Y. 1996) (noting preemption applies to State statutory or regulatory law and common law) (**citing**

***Freightliner Corp. v. Myrick***, 514 U.S. 280, 286-87 (1995)). "Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation." ***La. Pub. Serv. Comm'n v. FCC***, 476 U.S. 355, 369 (1986).

The defendant appears to confine the challenge to conflict preemption. State law will conflict with federal law when "'compliance with both federal and state regulations is a physical impossibility' or when state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" ***Qwest Corp. v. Minnesota Pub. Util. Comm'n***, 684 F.3d 721, 726 (8th Cir. 2012) (**quoting *Hillsborough Cnty., Fla. v. Automated Med. Labs., Inc.***, 471 U.S. 707, 713 (1985)). Otherwise, state law may coexist with the federal regulation to the extent they are not inconsistent. ***Merrill Lynch, Pierce, Fenner & Smith v. Ware***, 414 U.S. 117, 137 (1973).

The potential conflict exists between the plaintiff's claims and the U.S. Securities and Exchange Commission's (SEC) implementation of Securities Exchange Act regulations. Effective May 31, 2012, the SEC approved FINRA[3] Rule 5310, known as the Best Execution Rule, which requires member firms, such as the defendant, to "use ***reasonable diligence*** to ascertain the best market for the subject security and buy or sell in such market so that the resultant price to the customer is as favorable as possible under prevailing market conditions." FINRA Rule 5310(a) (emphasis added). Reasonable diligence is determined by examining such factors as:

> (A) the character of the market for the security (e.g., price, volatility, relative liquidity, and pressure on available communications);
> (B) the size and type of transaction;
> (C) the number of markets checked; [and]
> (D) accessibility of the quotation[.]

***Id.*** Moreover, the members are required to conduct a "regular and rigorous" review of the execution quality. ***Id.*** Supp. Material .09.

> In reviewing and comparing the execution quality of its current order routing and execution arrangements to the

[3] Financial Industry Regulatory Authority (FINRA) "enacts rules and publishes guidance in its role as regulator of securities firms and brokers." **See** Filing No. 48 - Brief p. 12 n.3.

> execution quality of other markets, a member should consider the following factors:
> (1) price improvement opportunities (i.e., the difference between the execution price and the best quotes prevailing at the time the order is received by the market);
> (2) differences in price disimprovement (i.e., situations in which a customer receives a worse price at execution than the best quotes prevailing at the time the order is received by the market);
> (3) the likelihood of execution of limit orders;
> (4) the speed of execution;
> (5) the size of execution;
> (6) transaction costs;
> (7) customer needs and expectations; and
> (8) **the existence of internalization or payment for order flow arrangements**.

***Id.*** (emphasis added).

The plaintiff pleads the defendant was obligated by a common law fiduciary duty of best execution to consider those factors which would maximize the client's economic benefit, such as those listed above, but instead relied only on the payment for order flow arrangements and its own benefit. **See** Filing No. 50 - Response p. 27-29 (**citing** Filing No. 1 - Complaint ¶ 1); **see also** Filing No. 1 - Complaint ¶¶ 16-20, 48 (listing factors). Here, the alleged common law duty obligates the defendant to consider a wide variety of factors while the regulations require the defendant to conduct a "rigorous" review of a variety of factors, including payment for order flow arrangements. Conscientious consideration of the factors constitutes the defendant's reasonable diligence in determining the best market for the subject security. The improper conduct alleged by the plaintiff, reliance on a single factor, runs afoul of both the alleged duty and the relevant regulation. However, the plaintiff's Complaint also exceeds the bounds imposed by the regulations. The plaintiff explicitly alleges, "[t]his action seeks to end this practice by ***foreclosing TD Ameritrade's consideration of kickbacks*** in deciding where to send trades and to disgorge the money TD Ameritrade wrongfully obtained as a result of its breach." **See** Filing No. 1 - Complaint ¶ 2 (emphasis added). The plaintiff goes on to seek relief pursuant to the NCPA, including an injunction enjoining the defendant "from factoring liquidity kickbacks when performing best execution for non-directed, standing limit orders, or, in the alternative, [the defendant] should be required to pass-on the rebate payments it receives to its customers." ***Id.*** ¶ 57. The plaintiff

seeks the court to attach obligations which diverge from the federally imposed standards by preventing the defendant from considering and retaining lawful payments for order flow. Accordingly, compliance with the alleged duty creates a physical impossibility or obstacle to compliance with federal regulation or its purposes.

**C. Breach of Fiduciary Duty**

In the alternative, the defendant moves to dismiss the plaintiff's claims for failure to state a viable claim of breach of fiduciary duty. **See** Filing No. 47. Specifically, the defendant argues the Complaint falls short of the pleadings required under either Fed. R. Civ. P. 9(b), or even under the more liberal standard of Fed. R. Civ. P. 8, to state a claim plausible on its face. ***Id.***

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 555 (2007) (alteration in original) (**quoting** Fed. R. Civ. P. 8(a)(2) and ***Conley v. Gibson***, 355 U.S. 41, 47 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" ***Ashcroft v. Iqbal***, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." ***Id.***

While the court must accept as true the factual allegations, such imperative does not apply to legal conclusions. ***Zayed***, 779 F.3d at 732-33. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." ***Iqbal***, 556 U.S. at 678. A court engages in a context-specific exercise drawing "on its judicial experience and common sense" to determine whether a complaint states a plausible claim for relief. ***Id.*** at 679. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" ***Twombly***, 550 U.S. at 556 (**quoting *Scheuer v. Rhodes***, 416 U.S. 232, 236 (1974)).

In addition, under the Federal Rules, a party alleging fraud must state with particularity the circumstances constituting fraud. **See** Fed. R. Civ. P. 9(b). Moreover, "[c]laims 'grounded in fraud' must meet this heightened pleading requirement." ***Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC***, 781 F.3d 1003, 1010 (8th Cir. 2015). Courts interpret Rule 9(b) "in harmony with the principles of notice pleading" requiring the complaint to "allege matters such as 'time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.'" **See *Drobnak v. Andersen Corp.***, 561 F.3d 778, 783 (8th Cir. 2009). The rule requires the additional information "to enable the defendant to respond specifically and quickly to potentially damaging allegations." ***Id.***; **see *Streambend***, 781 F.3d at 1010. Additionally, application of the rule "deters the use of complaints as a pretext for fishing expeditions of unknown wrongs." ***Streambend***, 781 F.3d at 1010. As with the Rule 8 requirements, mere "[c]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy [Rule 9(b)]." ***Drobnak***, 561 F.3d at 783; **see *Streambend***, 781 F.3d at 1013 (noting "vague allegations do not satisfy Rule 9(b)"). Nevertheless, "[w]hen the facts constituting the fraud are peculiarly within the opposing party's knowledge . . . such allegations may be pleaded on information and belief. Rule 9(b) is deemed satisfied if the allegations are accompanied by a statement of facts on which the belief is founded." ***Drobnak***, 561 F.3d at 783-84.

The parties agree the governing law is found in Nebraska case law. **See** Filing No. 48 - Brief p. 47; Filing No. 50 - Response p. 32. The Nebraska Court of Appeals held that "[b]ecause breach of fiduciary duty is akin to malpractice under Nebraska law and because malpractice is a form of negligence, . . . the elements of negligence constitute the elements of a breach of fiduciary duty cause of action." ***McFadden Ranch, Inc. v. McFadden**,* 807 N.W.2d 785, 789 (Neb. Ct. App. 2011). Accordingly, a plaintiff must necessarily plead four elements to survive a motion to dismiss a claim for breach of fiduciary duty: (1) the defendant owed the plaintiff a fiduciary duty, (2) which the defendant breached, (3) causing the plaintiff an injury, and (4) the plaintiff sustained damages. ***Id.*** at 790. The defendant does not dispute it owed a duty of best execution to the plaintiff under the framework provided by FINRA Rule 5310. **See** Filing No. 48 -

Brief p. 48. The defendant disputes whether the plaintiff has alleged a breach of the duty causing injury or damages.

The Nebraska Supreme Court explained the duty of best execution in ***Zannini***:

> The duty of best execution, which predates the federal securities laws, has its roots in the common law agency obligations of undivided loyalty and reasonable care that an agent owes to his principal. Since it is understood by all that the client-principal seeks his own economic gain and the purpose of the agency is to help the client-principal achieve that objective, the broker-dealer, absent instructions to the contrary, is expected to use reasonable efforts to maximize the economic benefit to the client in each transaction. The duty of best execution thus requires that a broker-dealer seek to obtain for its customer's order the most favorable terms reasonably available under the circumstances.

***Zannini v. Ameritrade Holding Corp.**,* 667 N.W.2d 222, 230-31 (Neb. 2003) (**quoting *Newton v. Merrill, Lynch, Pierce, Fenner & Smith***, 135 F.3d 266, 270 (3d Cir. 1998)). The ***Zannini*** explanation is consistent with FINRA Rule 5310. **See** FINRA Rule 5310(a)(1) (establishing duty to "use reasonable diligence to ascertain the best market for the subject security and buy or sell in such market so that the resultant price to the customer is as favorable as possible under prevailing market conditions"). The ***Zannini*** court and FINRA Rule 5310 provide additional guidance about factors, in addition to price, that are relevant to the best execution determination. ***Zannini**,* 667 N.W.2d at 231; FINRA Rule 5310(a).

The Complaint alleges the defendant breached its fiduciary duty of best execution by maintaining a trade execution policy and practice routing orders to trading venues paying the largest kickback, rather than best overall execution. **See** Filing No. 1 - Complaint ¶¶ 21, 48. The plaintiff suggests this routing practice caused a conflict of interest for the defendant by allowing it to put its own interests ahead of its clients and prevented best execution of the trades. ***Id.*** ¶¶ 11-12, 20, 55. In support of these allegations, the plaintiff states the defendant failed to compare the execution quality between competing market centers by considering the relevant factors, including execution price and speed. ***Id.*** ¶¶ 16-17, 21. Additionally, the plaintiffs states the defendant only considered the highest order payments for Class member non-directed, standing limit orders. ***Id.*** ¶ 21. The plaintiff alleges the defendant's automated routing

practices disregard execution quality by directing the orders to predetermined trading venues based on maximizing order flow payments. ***Id.*** ¶¶ 22-24. The plaintiff relies on academic studies proposing a negative relationship exists between take fees and limit order execution quality. ***Id.*** ¶¶ 32-36. Based on this relationship, the plaintiff suggests two trading centers displaying the same stock quote price are not identical because the trading center who provides a maker rebate is less likely to fill the limit order or fill the order as quickly as other venues. ***Id.*** ¶¶ 32-34. In addition to these facts, the plaintiff relies on Quirk's congressional hearing testimony confirming the defendant virtually always routes customer orders to venues paying the highest rebates. ***Id.*** ¶¶ 24-25.

Upon examination of the Compliant as a whole, the court finds the plaintiff's allegations fall short of reasonable inferences plausibly entitling the plaintiff to relief for breach of fiduciary duty. The plaintiff's allegations challenge the defendant's decision to route customer orders to venues paying rebates despite admitting he is not challenging the legality of payments for order flow. **See** Filing No. 50 - Response p. 27; Filing No. 1 - Compliant ¶ 37. Allegations attacking the practice of taker fees, and by extension receiving payments for order flow, without more, are inadequate to maintain a claim for breach of fiduciary duty.

Additionally, although Quirk testified as alleged by the plaintiff, such testimony is taken out of context. On June 17, 2014, the Permanent Subcommittee on Investigations of the Committee on Homeland Security and Governmental Affairs of the U.S. Senate held a hearing on the topic of conflicts of interest, investor loss of confidence, and high speed trading in U.S. stock markets. **See** Filing No. 49-2 - Hearing Transcript (Tr.). Quirk spoke at the hearing, giving the following remarks, among others:

> Brokers are required to seek the most favorable terms reasonably available under the circumstances for client orders. At our firm we consider the opportunity to obtain a better price than currently quoted, the speed of execution, and the likelihood of execution, amongst other factors when making that assessment.
>
> We also give our clients a choice. Their orders can be routed using our proprietary order routing logic, or they can choose from a list of direct routing destinations.
>
> Finally, we work with multiple market destinations. Rather than internalize our client flow, we believe that

> routing all orders to the market is more transparent and better aligned with the needs of our clients. We select these market centers based on rigorous due diligence where execution quality is the top priority. After, and only after, a market satisfies our standards for best execution do we consider transaction costs or revenue opportunities.

Filing No. 46-2 p. 6 - Tr. 38.

After making his statement, Quirk answered questions, including:

> Senator LEVIN. Is the size of the rebate offered by an exchange a factor in determining where you route nonmarketable customer orders?
>
> Mr. QUIRK. The way that our committees and the people responsible for order routing approach this is they start with the best execution, and they would go through a list of variables that we should consider as hurdles. And in order to get to a point where the revenue sharing is even considered, those hurdles have to be cleared.
>
> Senator LEVIN. And the revenue sharing that you are talking about is the rebate?
>
> Mr. QUIRK. Correct, sir.
>
> * * *
>
> Senator LEVIN [continuing]. After you say you have looked at the other factors, and then you look at the rebate issue, my question is: Is the size of the rebate offered by an exchange a factor in determining where you route those nonmarketable customer orders?
>
> Mr. QUIRK. Yes. It would be the last factor. All things being equal, that would be a factor.
>
> Senator LEVIN. And so the greater the rebate, that would be where you would go if it is otherwise best market.
>
> Mr. QUIRK. Yes.

***Id.*** at 10 - Tr. 46.

> Senator LEVIN. And so, again, your subjective judgment as to which market provided best execution for tens of millions of customer orders virtually always led you to route orders to the markets that paid you the most.
>
> * * *
>
> Mr. QUIRK. Virtually, yes.

***Id.*** at 12 - Tr. 48.

The court finds Quirk's testimony, as referenced by the plaintiff, insufficient to support a reasonable inference the defendant's rebates overrode every other factor in the routing decisions. Testimony, if true, that virtually all customer orders were routed

through the highest paying markets, is potentially consistent with the plaintiff's theory, yet, standing alone, fails to support the inference the defendant neglected to consider any of the other factors making up the duty of best execution. Moreover, even a cursory review of Quirk's contemporaneous hearing testimony directly and explicitly contradicts the plaintiff's interpretation. Quirk testified, "[a]fter, and only after, a market satisfies our standards for best execution do we consider transaction costs or revenue opportunities" and "[a]ll things being equal, [rebate size] would be a factor," but it "would be the last factor." **See** Filing No. 49-2 p. 6, 10 - Tr. 38, 46.

Accordingly, the Complaint lacks factual support alleging the defendant failed to use reasonable diligence in determining best execution. The Complaint insufficiently asserts a plausible claim by relying solely on the alleged fact the defendant routed virtually all orders to a pre-determined venue based on the amount of the rebate. The plaintiff seemingly contends the defendant routing "virtually" all orders to venues paying for order flow ***means*** the defendant failed to consider any factor other than payment for order flow. The plaintiff's allegations are factually insufficient to support the inference the defendant neglected to consider any of the other factors required by the duty of best execution. The plaintiff's focus on a single factor, even if the factual support was objective and unopposed, confirming the defendant's reliance on the factor provides no reasonable inference about whether the defendant relied on or neglected any other factor. Accordingly, the plaintiff's claim the defendant breached a fiduciary duty by failing to consider a wide variety of factors in order routing decisions is unsupported by well-pled factual allegations sufficient to avoid dismissal without regard to whether the standard is Rule 8(a) or Rule 9(b).

The plaintiff's Complaint is similarly deficient with respect to allegations of causation of an injury and damages. The plaintiff alleges the defendant "has earned significant, wrongful monies and profits from these material and opportunistic breaches that have also caused the orders made by [the plaintiff] to be executed in a manner that did not fulfill best execution. The defendant's customers have been damaged thereby, in an amount to be determined at trial." **See** Filing No. 1 - Complaint ¶¶ 49. The plaintiff also seeks disgorgement of all wrongfully obtained monies, asserting the defendant's derogation of duties and conscious wrongdoing allowed it to be unjustly enriched at the

expense of the class members. ***Id.*** at 18-20. In support of these allegations, the plaintiff states, "automatically routing . . . orders to the trading venues that offer the highest kickbacks causes injury and damage: slower execution, less likely execution, and less than optimum price." **See** Filing No. 50 - Response p. 32 (**citing** Filing No. 1 - Complaint ¶¶ 32-34, 36, 49). The plaintiff argues these allegations provide "detail." ***Id.*** However, the plaintiff relies on allegations about taker fees having a negative impact on orders, generally, as supported by academic research. ***Id.*** The plaintiff gives examples of the concept under circumstances where all other factors being equal a high taker fee decreases the attractiveness of the orders. ***Id.*** Nevertheless, the plaintiff fails to show how, in practice, for either himself or the proposed class, orders suffered relative to comparable orders in other market centers. In fact, the plaintiff fails to allege the defendant routed his order in derogation of its duty or that he or the class suffered more than a theoretical or risk of injury. For these reasons, the plaintiff fails to show he did not receive the defendant's services, including reasonable diligence to obtain the best execution of any order in exchange for the commissions paid.

"The principle underlying allowance of damages is to place the injured party in the same position, so far as money can do it, as he or she would have been had there been no injury or breach of duty, that is, to compensate for the injury ***actually sustained***." ***J.D. Warehouse v. Lutz & Co.***, 639 N.W.2d 88 (Neb. 2002) (emphasis added). In Nebraska, the plaintiff has the initial burden of offering evidence sufficient to prove damages. **See** ***Bedore v. Ranch Oil Co.***, 805 N.W.2d 68, 86 (Neb. 2011). "Generally, while damages need not be proved with mathematical certainty, neither can they be established by evidence which is speculative and conjectural." ***Sack Bros. v. Great Plains Co-op., Inc.***, 616 N.W.2d 796, 809 (Neb. 2000). "Damages which are uncertain, speculative, or conjectural cannot be a basis for recovery." ***Hitzemann v. Adam***, 518 N.W.2d 102, 107 (Neb. 1994); **see** ***American Cent. City, Inc. v. Joint Antelope Valley Auth.***, 807 N.W.2d 170, 181 (Neb. 2011). "Uncertainty as to the fact of whether damages were sustained at all is fatal to recovery." ***Sack Bros.***, 616 N.W.2d at 809; **see** ***Gary's Implement, Inc. v. Bridgeport Tractor Parts, Inc.***, 799 N.W.2d 249, 259 (Neb. 2011). Proof of damages "is sufficient if the evidence is such as to allow the trier of fact to estimate actual damages with a reasonable degree of

certainty and exactness." ***Pribil v. Koinzan***, 266 Neb. 222, 227 (Neb. 2003); **see *Lesiak v. Central Valley Ag Co-op., Inc.***, 808 N.W.2d 67, 76-77 (Neb. 2012) ("requir[ing] enough evidence to provide a reasonable basis for the jury to estimate the extent of the damage"); ***Gary's Implement***, 799 N.W.2d at 259 (An injured party will not be precluded from recovering because an exact computation is difficult.).

Generally, a party "cannot recover damages merely for an 'increased risk' of harm." ***Tillman v. C.R. Bard, Inc.***, No. 3:13CV222, 2015 WL 1456657, at *35 (M.D. Fla. Mar. 30, 2015) (noting jury could conclude medical device malfunction exposes patient to a real calculable risk of life-threatening harm); **see *Harms v. Laboratory Corp. of Am.***, 155 F. Supp. 2d 891, 912 (N.D. Ill. 2001) (granting summary judgment as to the plaintiffs' claim for "damages for risk of future harm" because "it is impossible to determine without speculation what sort of injury—if any—[would occur]"). The plaintiff does not allege he is subject to future harm, rather the plaintiff argues he was subject to past risk of harm without any suggestion of a cognizable injury actually sustained. **See** Filing No. 1 - Complaint.[4] In any event, "the increased risk [of injury] must be based on evidence and not speculation, and, more importantly, the size of the award must reflect the probability of occurrence." ***Dillon v. Evanston Hosp.***,771 N.E.2d 357, 371 (Ill. 2002) (noting future risk of injury as an element of damages).

In this case, the plaintiff suggests a zero probability of occurrence, since no actual injury is alleged despite the time period encompassing the risk of harm having preceded this lawsuit. **See *Iqbal***, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The record is devoid of conflicting evidence or even allegations supporting the plaintiff's ability to prove the existence and likelihood of damages in the form of exposure to "compromising efficiency and liquidity." **See, e.g.,** Filing No. 1 - Complaint ¶¶ 11. Similarly, the plaintiff alleges he was damaged because he and proposed class members did not receive the best execution on their trades, yet fails to suggest any tangible economic harm occurred. **See *id.*** ¶¶ 56, 70, 73.

At this stage in the proceedings, although the plaintiff is not required to come forward with evidence to support the allegations, the plaintiff must set forth a plausible

[4] Although the plaintiff does allege he plans to place orders with the defendant in the future (Complaint ¶ 5), the court now addresses only the harm associated with past relevant orders.

claim for relief. The plaintiff has not done that here. The relevant case law does not support the plaintiff's claims individually or for class treatment. Moreover, in evaluating whether a plaintiff has suffered an ascertainable loss, the court may not rely on "hypothetical or illusory" losses or wholly subjective expectations of a potential risk with unrealized harm. This is particularly true, where, as here, the express terms of the regulation permits the defendant to consider and receive order flow payments.

### D. Nebraska's Consumer Protection Act

The defendant contends the plaintiff's NCPA claim is expressly exempted under the plain terms of the NCPA. **See** Filing No. 48 - Brief p. 52-53. The defendant argues the NCPA does not apply to actions or transactions regulated by federal regulators. ***Id.*** at 52.

> Except as provided in subsection (2) of this Section [which does not apply to the instant case], ***the Consumer Protection Act shall not apply to actions or transactions otherwise permitted, prohibited, or regulated under laws administered by*** the Director of Insurance, the Public Service Commission, the Federal Energy Regulatory Commission, ***or any other regulatory body or officer acting under statutory authority of this state or the United States***.

Neb. Rev. Stat. § 59-1617(1) (emphasis added); **see** ***Wrede v. Exchange Bank of Gibbon***, 531 N.W.2d 523, 529-30 (Neb. 1995) (dismissing claim because allegations surrounded certificate of deposit regulated by Department of Banking and Finance which was exempted by NCPA); ***Hydroflo Corp. v. First Nat'l Bank of Omaha***, 349 N.W.2d 615, 622 (Neb. 1984) (dismissing claims relating to practice of opening bank accounts, which were exempted by NCPA as regulated under broad authority of the Department of Banking and Finance).

The plaintiff argues the action at issue is the defendant's "abrogation of a common law -- not statutory -- duty of best execution." **See** Filing No. 50 - Response p. 34-36. The plaintiff contends despite that "the SEC has spoken about factors affecting best execution and set forth reporting requirements tangential to an unfair business practice" the defendant is not "immunize[d] . . . from the NCPA." ***Id.*** at 35.

As discussed in more detail above, federal regulations adopted by the SEC govern the defendant's execution of trades. The SEC has broad authority over the defendant and such duty of best execution. The defendant's conduct and practices in this regard are, therefore, excluded from the terms of the NCPA and the plaintiff's claim should be dismissed. For these reasons,

**IT IS RECOMMENDED TO SENIOR JUDGE JOSEPH F. BATAILLON that:**

The defendant's Motion to Dismiss the Putative Class Action Complaint and Request to Take Judicial Notice (Filing No. 47) be granted.

**ADMONITION**

Pursuant to NECivR 72.2 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

**THE PARTIES ARE FURTHER ADMONISHED: For this matter the court is imposing page limitations and other specifications.** The plaintiff and the defendant each may not exceed 25 pages for briefs in support of (inclusive of any reply brief) or opposition to any objection pursuant to NECivR 72.2. The page limit includes optional use of a table of contents and authorities. All margins shall be one-inch on sides, top, and bottom. The page limit excludes the case caption and notice of service, which should exceed no more than one-half page at the beginning and end of the brief, respectively. Each page of a brief shall contain double-spaced text and single spaced footnotes. Typeface text shall be in 12-point Arial font. Footnote text may use 10-point font.

Dated this 20th day of August, 2015.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge